RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0178p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LUIS EDUARDO CUELLAR GARCIA,

*Petitioner,*

*v.*

No. 19-3489

WILLIAM P. BARR, Attorney General,

*Respondent.*

On Petition for Review of an Order of the Board of Immigration Appeals;
No. A 209 003 936.

Decided and Filed: June 8, 2020

Before: MERRITT, THAPAR, and LARSEN, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Juan P. Caballero, MICHIGAN STATE UNIVERSITY COLLEGE OF LAW, East Lansing, Michigan, for Petitioner. Jaclyn E. Shea, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

THAPAR, J., delivered the opinion of the court in which LARSEN, J., joined. MERRITT, J. (pp. 7–18), delivered a separate dissenting opinion.

_____

### OPINION

_____

THAPAR, Circuit Judge. Luis Eduardo Cuellar Garcia sought asylum in the United States. The question here is who should have decided his fate: an immigration judge or the United States Citizenship and Immigration Services (USCIS). Garcia argues that the

immigration judge lacked jurisdiction over his case. We disagree and deny his petition for review.

Garcia illegally entered the United States eight days before his eighteenth birthday. At that time, an immigration official found him to be an "unaccompanied alien child." 6 U.S.C. § 279(g)(2). Over a year later, Garcia applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming that he had been threatened by gangs in his home country (El Salvador). And based on his purported status as an "unaccompanied alien child," he sought relief from the USCIS. But instead, an immigration judge took jurisdiction over his case, reasoning that Garcia was now nineteen years old and thus no longer a "child."

The immigration judge reviewed Garcia's case and eventually denied his claims for relief. The Board of Immigration Appeals largely affirmed that ruling on the merits but remanded the case so that the immigration judge could determine whether to continue removal proceedings while Garcia pursued adjustment of status. The immigration judge denied the continuance. The Board affirmed.

Garcia then moved for a stay of removal pending this petition for review. But our court denied the stay. Garcia has since been removed from the country.

In his petition for review, Garcia challenges his immigration proceedings on three grounds: (1) that the immigration judge lacked jurisdiction over his case; (2) that the judge applied the wrong legal standard to his claim under the Convention Against Torture; and (3) that the judge wrongly denied his motion for a continuance. We review the legal questions presented in the petition de novo. *See Hernandez v. Whitaker*, 914 F.3d 430, 433 (6th Cir. 2019).

*Jurisdiction.* Garcia first challenges the immigration judge's jurisdiction over his case. Specifically, he points to 8 U.S.C. § 1158(b)(3)(C), which provides that USCIS "shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child (as defined in section 279(g) of Title 6)." According to our circuit—as well as the statutory text—this provision requires that the alien *be* an "unaccompanied alien child" when he applies for asylum; it's not enough that the alien *was* an "unaccompanied alien child" when he first entered the

country.  *See Harmon v. Holder*, 758 F.3d 728, 733–35 (6th Cir. 2014); *see also Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1287–89 (11th Cir. 2019); *Mazariegos-Diaz v. Lynch*, 605 F. App'x 675, 675–76 (9th Cir. 2015); *Cortez-Vasquez v. Holder*, 440 F. App'x 295, 298 (5th Cir. 2011) (per curiam).  Garcia was nineteen years old at the time of his asylum application, so the provision doesn't seem to apply here.  *See* 6 U.S.C. § 279(g)(2)(B) (defining an "unaccompanied alien child" as someone who "has not attained 18 years of age").

To be sure, our prior decision in *Harmon* didn't address what would happen if the alien had been previously found to be an "unaccompanied alien child" at the time of his entry.  *See* 758 F.3d at 734 & n.3.  But that finding turns out to be irrelevant.  Again, the statute requires that the asylum application be filed by an "unaccompanied alien child (*as defined* in [6 U.S.C. § 279(g)])."  8 U.S.C. § 1158(b)(3)(C) (emphasis added).  And that statutory provision defines an "unaccompanied alien child" as someone who (1) "has no lawful immigration status in the United States," (2) "has not attained 18 years of age," and (3) has no "parent or legal guardian in the United States" who can provide physical custody and care.  6 U.S.C. § 279(g)(2).  Nowhere does the statute ask whether an immigration official previously found the applicant to be an "unaccompanied alien child."  Rather, it asks only whether the alien meets the statutory criteria at the time of his application.  And like other judges, immigration judges have the power to determine their own jurisdiction.  *See, e.g.*, *Xiao v. Barr*, 979 F.2d 151, 154–55 (9th Cir. 1992); *In re Bulnes-Nolasco*, 25 I. & N. Dec. 57, 59 (BIA 2009); *cf. Landon v. Plasencia*, 459 U.S. 21, 31 (1982).  Thus, the immigration judge properly exercised jurisdiction once he found that Garcia did not meet the statutory criteria at the time of his asylum application.

For what it's worth, the Board of Immigration Appeals recently reached the same conclusion in a published decision.  *See In re M-A-C-O-*, 27 I. & N. Dec. 477, 480 (BIA 2018).  And the Departments of Homeland Security and of Health and Human Services have codified the same reading of the statute in two regulations—though the changes postdate the immigration proceedings in this case.  *See* 8 C.F.R. § 236.3(d); 45 C.F.R. § 410.101; *see also* Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44,392, 44,426–27, 44,454–55, 44,491 (Aug. 23, 2019) (explaining that the regulations

implement the "plain language" of § 279(g)(2)).  But the statutory text more than speaks for itself.

Garcia points out that USCIS has a policy of exercising jurisdiction in cases like his own. *See* Memorandum from Ted Kim, Acting Chief, Asylum Division, U.S. Citizenship and Immigration Services, Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children 2 (Mar. 28, 2013).[1]  Taken at face value, this policy doesn't help him since it doesn't divest immigration judges of jurisdiction over any cases;  it simply tells USCIS officials that they should *also* exercise jurisdiction over these cases. *See id.*; *see also J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 375 (D. Md. 2019) (explaining that, under the USCIS policy, immigration judges also exercise jurisdiction over these cases).  In fact, the policy isn't even binding legal authority.  *See, e.g.*, *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1118–19 (9th Cir. 2007); *In re Briones*, 24 I. & N. Dec. 355, 365 n.7 (BIA 2007).  So it's hard to see how it could have affected the immigration judge's jurisdiction over Garcia's case.

But even if the policy purported to divest the immigration judge of jurisdiction, it wouldn't matter.  The relevant statute unambiguously grants "initial jurisdiction" to USCIS only when the alien is an "unaccompanied alien child" when he applies for asylum.  8 U.S.C. § 1158(b)(3)(C); *Harmon*, 758 F.3d at 734.  And the statute unambiguously defines an "unaccompanied alien child" as someone who has not yet turned eighteen.  6 U.S.C. § 279(g)(2). Whatever the policy said, it couldn't rewrite the plain terms of the statute.  *See Arangure v. Whitaker*, 911 F.3d 333, 337–38 (6th Cir. 2018); *see also Salmeron-Salmeron*, 926 F.3d at 1289 n.6 (pointing out that the USCIS policy improperly allows the agency to "engage in a legal fiction" that conflicts with the "clear jurisdictional language of the statute").

In sum, the immigration judge properly exercised jurisdiction over Garcia's case.

---

[1]For the record, USCIS recently tried to replace this policy.  *See* Memorandum from John Lafferty, Chief, Asylum Division, U.S. Citizenship and Immigration Services, Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children (May 31, 2019).  But a district court in another circuit has temporarily enjoined the agency from doing so.  *See J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 380 (D. Md. 2019).  The dissent invokes the reasoning from this decision as the basis to grant Garcia relief. Yet Garcia himself tells us that this revised policy was adopted long after his immigration proceedings and thus has no bearing on this case.  *See* Garcia Br. at 18 n.2.  That's probably why he hasn't offered any argument based on the district court's opinion.

*Convention Against Torture.*  Garcia next argues that the immigration judge applied the wrong legal standard to his claim under the Convention Against Torture.  To prevail on this claim, Garcia must show that he would be in danger of being tortured if he returned to El Salvador.  *See Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001).  Torture includes acts inflicted by private parties "with the consent or acquiescence" of public officials.  *Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005) (quoting 8 C.F.R. § 208.18(a)(1)).  And based on this definition, our circuit has said that torture includes cases in which public officials show "willful blindness" to private torture.  *Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006).  In doing so, our circuit abrogated a prior Board of Immigration Appeals decision known as *In re S-V-*, 22 I. & N. Dec. 1306 (BIA 2000), which limited the term "torture" to willful acceptance, *see Amir*, 467 F.3d at 927.

Garcia says that the immigration judge failed to consider the "willful blindness" standard (and that the Board summarily adopted the same reasoning).  But that's simply not true.  The immigration judge specifically noted that the Sixth Circuit "considers whether the government is engaged in willful blindness of the actions of those within its borders who are engaging in torturous conduct."  AR 422 (citing *Amir*, 467 F.3d at 921).  Garcia insists that the judge used other language in the decision that "harkens back" to the incorrect standard.  Garcia Reply Br. at 23.  Yet all he points to is a statement that an alien must show more than that the government is "unable to control" the torture.  AR 422.  And that's a correct statement of the law.  *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015).  Nor does it matter that the judge cited *In re S-V-* for other legal propositions.  Indeed, our court has upheld a nearly identical rule statement (with citations to *In re S-V-*) even though the rule statement didn't expressly reference the "willful blindness" standard.  *See Nerghes v. Mukasey*, 274 F. App'x 417, 423–25 (6th Cir. 2008).  Since the rule statement here discussed the correct standard, it easily passes muster.

*Continuance.*  Finally, Garcia argues that the immigration judge wrongly denied his motion for a continuance.  But this claim became moot once Garcia was removed from the county.  True, our circuit has said that an alien's removal doesn't necessarily moot his petition for review since a removal order can have collateral consequences for the alien.  *See, e.g.*, *Garcia-Flores v. Gonzales*, 477 F.3d 439, 441 n.1 (6th Cir. 2007).  Yet that doesn't mean that

*every* claim in the petition remains a live controversy. Garcia moved for a continuance of his removal proceedings so that he could seek adjustment of status. But at this point, the removal proceedings have been completed so there's nothing left to "continue." Simply put, we cannot grant any relief on this claim. Hence the claim is moot. *See Qureshi v. Gonzales*, 442 F.3d 985, 988–90 (7th Cir. 2006); *cf. Ferry v. Gonzales*, 457 F.3d 1117, 1132 (10th Cir. 2006); *Zundel v. Berrong*, 106 F. App'x 331, 334 (6th Cir. 2004); *Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1243 (11th Cir. 2002) (per curiam).

We deny Garcia's petition for review, except for his challenge to the denial of his motion for a continuance, which we dismiss as moot.

———————————

## DISSENT

———————————

MERRITT, Circuit Judge, dissenting. Petitioner Luis Eduardo Cuellar Garcia, a native of El Salvador, came to the United States in April 2016 to escape rampant crime and violence, often stemming from unchecked gang warfare. He was 17 years old when he arrived at the border in El Paso, Texas, and immediately presented himself to border officials. Because he was only 17 and entered the country without a parent or legal guardian, he was designated an "unaccompanied alien child" and accorded certain protections not extended to adults. *See* 6 U.S.C. § 279(g)(2). Relying on the existing policy that extended the protections given to unaccompanied alien children beyond age 18, Garcia, who by then was 19, filed an asylum application with Citizenship and Immigration Services in August 2017.

Garcia's designation as an unaccompanied alien child was in full force and effect on August 4, 2017, when he filed his asylum application, as recognized by the immigration judge who closed Garcia's removal proceedings on October 2, 2107. The immigration judge properly declined initial jurisdiction over Garcia's removal proceedings, recognizing that Garcia's continued status as an unaccompanied alien child under the then-in-effect policy entitled him to have his asylum application adjudicated by Citizenship and Immigration Services, not the immigration court. Order of the Immigration Judge, No. A209-003-936 (Oct. 2, 2017) ("Respondent *is and remains* a[n unaccompanied alien child], per [United States Citizenship and Immigration Services] FAQs, and administrative closure for adjustment of status is appropriate over government objection.") (emphasis added) (Administrative Record at 1095).

Without notice, the government applied a new, unwritten and informal policy to Garcia after he had filed his asylum application with Citizenship and Immigration Services, arguing that he must adjudicate his asylum application in immigration court instead of in the more child-friendly forum of Citizenship and Immigration Services. Based on this new, informal policy, the government requested reconsideration of the immigration judge's previous denial of jurisdiction over Garcia's case. Adopting the government's argument, the immigration judge reconsidered

his earlier decision and assumed jurisdiction over Garcia's asylum application.  Relief was denied, and Garcia was deported in June 2019.  Less than two months after Garcia was deported, a federal court enjoined the new government policy that usurped, without notice, the rights of unaccompanied alien children filing an asylum application after turning 18, and ordered that the previous policy be maintained until the court considered the validity of the new policy.  *J.O.P. v. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367 (D. Md. 2019).  The case is currently proceeding in the Maryland court.

I respectfully dissent from the majority opinion because Garcia is entitled to relief under the law and policy covering unaccompanied alien children that was in effect on August 4, 2017, the date he filed his asylum application with Citizenship and Immigration Services. The post-hoc deprivation by the government to strip Garcia of the immigration status on which he relied, and to deny him the protections of that status, is arbitrary and capricious and should not be condoned by the courts.  He should be paroled back to the United States to have his asylum application and still-pending adjustment of status application[1] reviewed.

## I.

In 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (sometimes referred to herein as "the Act").  Pub. L. No. 110-457 § 235(d), 122 Stat. 5044, 5074, codified at 8 U.S.C. §§ 1158, 1232(d).  The Act extended legal protections to "unaccompanied alien children" who entered the United States without a parent or other legal guardian.  An "unaccompanied alien child" is defined as a minor who:  (1) has no lawful immigration status in the United States; (2) has not attained 18 years of age; and (3) with respect to whom—(i) there is no parent or legal guardian in the United States, or (ii) no parent or legal guardian in the United States is available to provide care and physical custody.  6 U.S.C. § 279(g)(2).  The Act requires that after an unaccompanied child is discovered by federal border officials, he must be transferred to the custody of the Office of Refugee Resettlement within the Department of Health and Human Services for care and further screening.  Unlike the agencies

---

[1]Garcia also received status as a Special Immigrant Juvenile, which conferred certain rights relating to his adjustment-of-status application.  That application was still pending when he was deported.

whose mission is to enforce immigration laws, the Department of Health and Human Services has social workers trained to work with children. 8 U.S.C. § 1232(a)(3).

The Act also provides that United States Citizenship and Immigration Services, not an immigration court, "*shall* have initial jurisdiction over an asylum application filed by an unaccompanied alien child." 8 U.S.C. § 1158(b)(3)(C) (emphasis added).[2] The statute is silent on when or how the designation lapses. It neither directs nor prohibits Citizenship and Immigration Services from reassessing an individual's status as an unaccompanied alien child at the time of filing an application for asylum. Similarly, the Act neither expressly authorizes nor expressly prohibits Citizenship and Immigration Services from rescinding an earlier unaccompanied alien child determination.

The Act delegates authority to federal agencies to enact "regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases." *Id*. § 1232(d)(8). Regulations were never promulgated. In the absence of express statutory direction or regulations, in a memorandum authored by Asylum Chief Ted Kim in May 2013, Citizenship and Immigration Services implemented a policy of accepting jurisdiction of asylum applications filed by individuals previously determined to be unaccompanied alien children without having asylum officers make redeterminations regarding their status. *See Updated Procedures for Determination of Initial Jurisdiction over Asylum Application Filed by Unaccompanied Alien Children* (May 28, 2013) ("Kim Memo").

The Kim Memo was prompted by a 2012 report by the Citizenship and Immigration Services Ombudsman recommending that it implement a policy of not rescinding unaccompanied alien child determinations. In an independent analysis of problems encountered by unaccompanied children seeking asylum in the United States, the Ombudsman started from

---

[2]The asylum process before Citizenship and Immigration is less adversarial and more sensitive to the special needs of children who do not know how to navigate an immigration system designed for adults, and who likely sought safety in the United States without understanding their legal options. The asylum process in Citizenship and Immigration Services uses officials trained to conduct nonadversarial interviews and to apply child-sensitive and trauma-informed interview techniques instead of subjecting children to cross-examination by government lawyers in immigration court.

the understanding that when a child is placed in removal proceedings, the apprehending border agency, "must make a finding that the child is unaccompanied." United States Citizenship and Immigration Services Ombudsman, *Ensuring a Fair and Effective Asylum Process for Unaccompanied Children* at 7 (Sept. 12, 2012) (pdf file can be found at dhs.gov). Prior to the 2012 Ombudsman Report, Citizenship and Immigration Services had been performing redeterminations of a child's status as an unaccompanied alien child upon receipt of an asylum application and again during the asylum interview. *Id*. at 5–6. The Ombudsman outlined several problems with redetermining unaccompanied alien child status, including difficulty rescheduling interviews, and inadequate methods and approaches to adjudication. *Id*. The Ombudsman was concerned that instead of "facilitating expedited, non-adversarial interviews envisioned by Congress," the policy of undertaking a redetermination of unaccompanied alien child status at every asylum interview created "delay and confusion." *Id*. at 6.

In the Ombudsman's view, "[the Act's] procedural and substantive protections were designed to remain available to [unaccompanied alien children] throughout removal proceedings, housing placement, and the pursuit of any available relief," and "[s]ubjecting a child seeking asylum to multiple [[unaccompanied alien child] determinations as [was] required by [Citizenship and Immigration Services'] temporary guidance appears at odds with [the Act's] express purpose, namely, to provide timely, appropriate relief for vulnerable children." *Id*. Further, the Ombudsman noted that "Congress did not provide language indicating that the filing of an asylum application should trigger a new or successive [unaccompanied alien child] determination that could eliminate statutory protections or remove the [unaccompanied alien child] from [removal] proceedings." *Id*. at 7. The Ombudsman concluded that "[e]liminating the practice of Citizenship and Immigration Services redetermining unaccompanied alien child status during the asylum interview would also restore a level of fairness that comes from having a predictable and uniform process." *Id*. at 8. Under the policy adopted by the Kim Memo, which was consistent with the Ombudsman report's recommendations, asylum officers were required to accept determinations made by federal border officials regarding unaccompanied alien child status even if an individual had turned eighteen or been reunited with a parent or guardian by the time he applied for asylum. Kim Memo at 3.

On June 14, 2019, Citizenship and Immigration Services published a memorandum dated May 31, 2019, on its website, "*Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children*," that changed the policy for determining whether a child is eligible for protections under the Act.  The policy became effective on June 30, 2019, but it had been informally applied since 2017.[3]  Pursuant to the June 2019 memo, all asylum officers were required to "mak[e] independent factual inquiries in all cases in order to determine whether the individual met the [unaccompanied alien child] definition on the date of first filing the asylum application."  Under the new policy, an individual originally designated as an unaccompanied alien child who, relying on the former policy, applied for asylum after reaching the age of eighteen or after being reunited with a parent or guardian, will arrive at an asylum interview to find that Citizenship and Immigration Services must now decline jurisdiction because of a redetermination that the applicant was not an unaccompanied alien child at the time he filed an application.  Garcia's case became embroiled in the changing government directives, subjecting him to a muddled and confused immigration system where even the immigration judge assigned to his case was unaware the government apparently changed its policy relating to unaccompanied alien children.

**II.**

Garcia arrived in the United States in April 2016, and a Texas juvenile court ruled that it was not in his best interest to return him to his native country.  The juvenile court found that Garcia had "insufficient parental protection from [gang] attacks while in El Salvador," and that "it is NOT in the best interest of the child to be removed to El Salvador."  *In the interest of L.E.C.G.*, No. 2016DCM3493 (D. Ct. of El Paso Cty., Tex., 388th Jud. Dis. May 5, 2016) (capitalization in original) (Administrative Record at 81-85).  Based on this ruling, Garcia was accorded status by federal immigration authorities as a "Special Immigrant Juvenile," a subset of those designated "unaccompanied alien children" who have been neglected or abused in their

---

[3]On February 20, 2017, the Department of Homeland Security issued a memorandum announcing (among other things) an upcoming change in the processing of unaccompanied alien children.  The memo directs the various agencies overseeing immigration and border protection to issue uniform written guidance on which arriving aliens will receive "unaccompanied alien child" designation.  There is no indication that any written guidelines were issued before the June 2019 "*Updated Procedures*" policy memo.

home countries. Unaccompanied alien children may receive Special Immigrant Juvenile status only after satisfying a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to his country of last habitual residence, and that the child is dependent on the court or placed in the custody of the state or someone appointed by the state. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). The child must also receive approval from Citizenship and Immigration Services and the consent of the Secretary of Homeland Security to obtain the status. 8 U.S.C. § 1101(a)(27)(J). Once an immigrant successfully petitions for Special Immigrant Juvenile status, the immigrant becomes eligible for a visa under 8 U.S.C. § 1153(b)(4) (allocating a certain percentage of visas annually to "special immigrants," including special immigrant juveniles). Once attained, Special Immigrant Juvenile classification conveys a host of other important benefits in addition to a path to lawful permanent residence status. Special Immigrant Juvenile status, once granted, may not be revoked except "on notice," 8 C.F.R. § 205.2, and upon the government's compliance with a series of procedural safeguards.

On August 4, 2017, Garcia filed an asylum application with Citizenship and Immigration Services, not with the immigration court, pursuant to his status as an unaccompanied alien child. *See* 8 U.S.C. § 1158(b)(3)(C) ("An asylum officer . . . shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child."). He was 19 years old. On October 2, 2017, at a hearing in the immigration court, Garcia moved to administratively close the removal proceedings because he had an asylum application pending with Citizenship and Immigration Services based on his status as an unaccompanied alien child. The immigration judge agreed that he did not have jurisdiction over Garcia's case, and he administratively closed Garcia's removal proceedings over the objection of the government:

> Respondent is and remains a[n unaccompanied alien child], per [United States Citizenship and Immigration Services] FAQs, and administrative closure for adjustment of status is appropriate over government objection.

Order of the Immigration Judge, No. A209-003-936 (Oct. 2, 2017) (Administrative Record at 1095). The government objected to closure of the proceedings because it maintained for the first time, in reliance on a new, as-yet-unpublished informal policy, that Garcia was not an

unaccompanied alien child under the statutory definition because he was over 18 when he filed his asylum application.

With removal proceedings administratively closed, the asylum office for Citizenship and Immigration Services scheduled Garcia for an asylum interview in Chicago in November 2017. However, prior to the interview, counsel for the Department of Homeland Security in Detroit sent an email to an asylum official in the asylum office of Citizenship and Immigration Services informing it that Citizenship and Immigration Services no longer had jurisdiction over Garcia's asylum application because Garcia was over 18 when he filed. Email dated Nov. 13, 2017 (Administrative Record at 1081-82). Citizenship and Immigration Services responded that "upon further review" it agreed that it "doesn't have jurisdiction" over Garcia's asylum application. Email date Nov. 14, 2017 (Administrative Record at 1081).

On November 16, 2017, based on this email exchange, the government moved to reopen Garcia's removal proceedings in immigration court (Administrative Record at 1077-82). On December 4, 2017, the immigration judge summarily reversed his October 2, 2017, decision declining jurisdiction over Garcia's case, and granted the government's motion to reopen Garcia's removal proceedings in immigration court. The immigration judge scheduled a hearing, based at least in part on the informal email exchange (Administrative Record at 1068). Garcia renewed his objection to the jurisdiction of the immigration court, but his objections were overruled and his asylum application was denied by the immigration judge. Oral Decision, No. A209-003-936 (Apr. 25, 2018) (Administrative Record at 418-27). Garcia raised his jurisdictional challenge to the Board of Immigration Appeals, but the Board affirmed the denial of his asylum application on October 5, 2018 (Administrative Record at 349-53). Garcia then moved for a continuance of removal proceedings based on his Special Immigrant Juvenile status and pending application for adjustment of status. The continuance was denied by the immigration judge and the Board, and Garcia was deported to El Salvador in June 2019, where he remains today.

**III.**

It is undisputed in this case that Garcia properly received designation as an "unaccompanied alien child" upon entry into the United States. 6 U.S.C. § 279(g)(2). The majority argues that the immigration judge had jurisdiction over Garcia's asylum application because, as a 19 year old, he no longer met the statutory definition of an "unaccompanied alien child." But the statute addresses only the criteria that must be met initially to receive the statute's protections upon entry into the United States. It is silent on how and when the designation lapses. The statute extends the one-year filing deadline for asylum applications for unaccompanied alien children, making it reasonable to conclude that Congress knew that some unaccompanied alien children would turn 18 by the time they filed for asylum.

Our prior decision in *Harmon v. Holder*, 758 F.3d 728 (6th Cir. 2014), acknowledges that Citizenship and Immigration Services maintains jurisdiction even if the alien turns eighteen while the application is pending. *Id*. at 734 ("The [statutory] section heading indicates that once an unaccompanied alien child files an asylum application, the [United States Citizenship and Immigration Services] *maintains jurisdiction even if that person turns eighteen while the application is pending*.") (footnote omitted citing to the 2013 Kim Memo) (emphasis added). While the unaccompanied-alien-child designation does not last in perpetuity, Garcia reasonably relied on the existing policy to file his asylum application at age 19 and after the one-year deadline, reasonably believing that the protections it afforded would continue. The initial ruling by the immigration judge declining jurisdiction over Garcia's claim demonstrates that the immigration court held the same view. More importantly, *Harmon* says nothing that would contradict the policy of continuing the protections of the Trafficking Victims Protection Reauthorization Act to an unaccompanied child who turns 18 after properly receiving the designation. To the contrary, Garcia is exactly the type of arriving alien minor the statute sought to protect.

Garcia did not receive any notice before filing his asylum application that his unaccompanied-alien-child status had been rescinded or otherwise nullified under the new, unwritten policy, and he reasonably relied on that status to file his asylum application with Citizenship and Immigration Services after he turned 18. "[W]hile an agency is free to change

its policies, it must address the "facts and circumstances that underlay or were engendered by the prior policy." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). If an agency ignores such reliance interests, it may have "entirely failed to consider an important aspect of the problem," rendering the agency's action arbitrary and capricious. *See id.* at 552 (Breyer, J., dissenting); *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). The manner in which the new, as-then-unwritten and unpublished policy was applied to Garcia embodied "arbitrary and capricious" government action.

A Maryland federal district court opinion filed in August 2019 supports Garcia's claim that the immigration judge should not have changed its position and asserted jurisdiction over his asylum application. *J.O.P. v. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367 (D. Md. 2019). On July 1, 2019, four unaccompanied children seeking asylum filed a lawsuit against the Department of Homeland Security and Citizenship and Immigration Services under the Administrative Procedure Act. The plaintiffs sought declaratory and injunctive relief, claiming that the policy set forth in the June 2019 "Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children" would retroactively strip them of protections granted under the Trafficking Victims Protection Reauthorization Act in violation of the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment.

On August 2, 2019, after a hearing, the court granted the motion for a temporary restraining order, which it later converted to a preliminary injunction. The court noted that the June 2019 memo did not address whether the facts and circumstances that underlay the agency's prior policy had changed, and did not address whether Citizenship and Immigration Services had taken into account any interests of those individuals who had been relying on the prior policy in making decisions about filing an asylum application. After a hearing, the court held that plaintiffs and those similarly situated are likely to succeed on their claim that the redetermination policy violates the Administrative Procedure Act because Citizenship and Immigration Services failed to go through required notice-and-comment procedures and failed to consider reliance interests created by the 2013 Kim Memo. The court also concluded that plaintiffs and those similarly situated are likely to experience irreparable harm if the redetermination policy is not enjoined, and that the balance of harms favors injunctive relief. The court explained in part:

Congress has delegated authority through the [the Act] to [Citizenship and Immigration Services] to enact "regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases." 8 U.S.C. § 1232(d)(8). The [June 2019 memo] skirts this instruction from Congress that [Citizenship and Immigration Services] issue regulations to implement procedures related to [unaccompanied alien children's] asylum applications.

. . .

Defendants entirely failed to consider reliance interests in the decision memorandum outlining the agency's new policy. While [Citizenship and Immigration Services] may be justified in changing course to create consistency between the jurisdictional determinations made by [Citizenship and Immigration Services] and immigration judges, it needs to at least provide a "reasoned explanation" for why it is disregarding the facts that underlay the earlier policy as well as the serious reliance interests engendered by the prior rules. Given the agency's failure to do so, Plaintiffs are likely to succeed on their claim that the redetermination policy is arbitrary and capricious in violation of the [Administrative Procedure Act].

409 F. Supp. 3d at 377-79 (internal citations omitted).

The Maryland district court also ordered the government to retract any decisions already rendered based on the new policy and to reinstate consideration of such cases applying the policy in the 2013 Kim Memo. Citizenship and Immigration Services states on its website it is reviewing all asylum applications where Citizenship and Immigration Services determined it did not have jurisdiction under the 2019 memorandum and will issue Notices of Re-examination of Jurisdictional Determination if jurisdiction was erroneously declined. (https://www.uscis.gov/legal-resources/legal-settlement-notices/jop-v-us-dept-homeland-security-et-al-information) (dated Aug. 29, 2019).**4**

---

**4**The website states:

On Aug. 2, 2019, the United States District Court for the District of Maryland in the case of *J.O.P. v. U.S. Dept. of Homeland Security, et. al.*, Civil Action 8:19-cv-01944, issued a temporary restraining order enjoining U.S. Citizenship and Immigration Services (USCIS) from applying the May 31, 2019, unaccompanied alien children (UAC) memorandum, "Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children." Pursuant to the order, USCIS may not rely on the 2019 memorandum to reject jurisdiction over any asylum application filed by a UAC (as defined in the Homeland Security Act, 6 U.S.C. § 279(g)(2)) under the Trafficking

While the Department of Homeland Security and the immigration court did not invoke the June 2019 policy memorandum in Garcia's case because it had not yet been publicly issued, Citizenship and Immigration Services declined jurisdiction over Garcia's asylum application by invoking the same reasoning set forth in the June 2019 policy memorandum subsequently enjoined by the Maryland district court. The immigration judge adopted that reasoning in reasserting jurisdiction over Garcia's asylum application (Administrative Record at 1077-82). Based on the injunction entered by the Maryland District Court pursuant to *J.O.P. v. Department of Homeland Security*, Citizenship and Immigration Services improperly declined jurisdiction over Garcia's asylum application filed on August 4, 2017. Under the 2013 Kim memo, which was reinstated by the Maryland district court, Garcia, although he had turned 19 when he filed his asylum application, was still eligible for his application to be adjudicated by Citizenship and Immigration Services and the immigration court should not have taken jurisdiction over it.

The majority contends that Garcia "hasn't offered any argument based on [the injunction issued in *J.O.P.*]." Maj. Op. at 4 n.1. To the contrary, the reasoning offered by Garcia as to why the immigration court erroneously exercised jurisdiction over his asylum application and the reasoning for issuing the injunction in *J.O.P.* are the same. Garcia referenced the enjoining of the new policy by *J.O.P.* in both his initial and reply briefs. No "argument" is necessary because the reasoning undergirding the government policy applied to Garcia has been enjoined. *J.O.P.* orders that Citizenship and Immigration Services retract and reinstate any adverse decisions already rendered applying the new policy. That is exactly the relief Garcia seeks.

---

Victims Protection Reauthorization Act (TVPRA) if that application would have been accepted under the May 28, 2013, USCIS memorandum that predated the May 31, 2019, memorandum.

The court further ordered USCIS to retract any adverse decisions already rendered for cases applying the 2019 UAC memorandum, and to reinstate consideration of such cases applying the May 28, 2013, UAC memorandum, "Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children."

In accordance with the court's order, USCIS is reviewing all asylum applications where USCIS determined that it did not have jurisdiction under the 2019 UAC memorandum. Applicants will receive a Notice of Re-Examination of Jurisdictional Determination if they were notified that USCIS declined to accept jurisdiction under the 2019 UAC memorandum.

If you believe that the court's order in this case applies to you, and you have not received a Notice of Re-Examination or have questions about a pending asylum application, please contact the Director of the USCIS Asylum Office having jurisdiction over your asylum application. Please address such correspondence to the Director of the Asylum Office and identify it with a subject line that includes "JOP UAC issue," followed by the applicant's full name and A-file number.

If the 2013 policy had been applied to Garcia, jurisdiction over his asylum application would have remained with Citizenship and Immigration Services, the agency with which he filed on August 4, 2017. And, had the 2013 policy been applied to Garcia, the immigration judge's ruling on October 2, 2017, declining initial jurisdiction would not have been challenged by the government and subsequently overturned by the immigration judge based on the email exchange between officials at Citizenship and Immigration Services and the Department of Homeland Security in November 2017.

I would therefore vacate the Board's order dated October 5, 2018, and remand to the Board for review of Garcia's asylum application under the reasoning set forth in *J.O.P. v. Department of Homeland Security*. Garcia is entitled to receive a Notice of Re-Examination of Jurisdictional Determination and he should be paroled back to the United States at government expense. Garcia is also entitled to have Citizenship and Immigration Services assess the status of his still-pending application for adjustment of status based on his designation as a Special Immigrant Juvenile, which remains active.