NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0218n.06

No. 20-3860

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| AMADOU MAMADOU DIA, | ) | |
|  | ) | |
| Petitioner, | ) | |
|  | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
|  | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
|  | ) | |
| Respondent. | ) | **OPINION** |
|  | ) | |

BEFORE: KETHLEDGE, STRANCH, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Amadou Mamadou Dia used a counterfeit passport to obtain a short-term visa and enter the United States. He overstayed by more than a year before applying for asylum and withholding of removal. And his wife filed an I-130 petition with United States Citizenship and Immigration Services ("USCIS") on Dia's behalf. The Government eventually determined that Dia's asylum application had been untimely. So he withdrew that application, which was also interfering with the I-130 petition. Since Dia could not post bond while that petition was pending, the immigration judge ("IJ") entered a removal order against him. DHS executed that order, and Dia is now in Senegal.

Dia argues that his removal proceedings should have been continued to allow USCIS to decide his I-130 petition. The Government argues that his removal to Senegal mooted this claim. We can still vacate the removal order and continue Dia's removal proceedings, so his claim is not moot. But the claim fails on the merits, so we **DENY** his petition for review.

**I.**

Dia is a 33-year-old native of Mauritania. He came to the United States on a P-3 visa for entertainers in May 2011. That visa authorized him to stay for about two months. He entered the country using a Senegalese passport.

More than a year after his visa had expired, Dia filed an I-589 application for asylum and withholding of removal, claiming a fear of persecution in Mauritania. DHS then filed a Notice of Appearance against Dia on August 1, 2012. That Notice charged Dia with removability under 8 U.S.C. § 1227(a)(1)(B) for having overstayed his visa.

Removal proceedings began that fall and lasted for more than seven years. Only a few moments are relevant for our purposes. At the first proceeding, Dia, represented by counsel, conceded his removability and prepared to adjudicate his I-589. In July 2019, Dia's wife (a U.S. citizen) submitted an I-130 petition for alien relative with the USCIS on his behalf. If granted, the I-130 would allow the IJ to consider Dia's request for adjustment of status. Adjustment of status allows an IJ to give a removable alien lawful-permanent-resident status provided that the alien meets certain conditions. *Ahmed v. Mukasey*, 519 F.3d 579, 581 n.1 (6th Cir. 2008) (citing 8 U.S.C. § 1255(a)). Either adjustment of status or success on his I-589 would allow Dia to remain in the United States.

But the Government raised concerns about Dia's options. The asylum portion of his I-589 was untimely and pursuing withholding of removal interfered with Dia's pending I-130. So the parties agreed that it made sense for Dia to withdraw his I-589. Taking these options off the table would allow everyone to concentrate on Dia's pending I-130 and, if that were granted, adjustment of status. The IJ agreed, and Dia knowingly withdrew his I-589 with prejudice.

So the parties focused on Dia's pending I-130 and any subsequent request for adjustment of status. The Government agreed that Dia was likely eligible for adjustment of status. But it also pointed out that, even if USCIS granted his I-130, Dia would need an additional waiver. The Immigration and Naturalization Service had concluded that Dia's Senegalese passport was counterfeit. In addition to that, his I-130 was internally inconsistent; his wife listed his birth country as Senegal, while Dia reported being born in Mauritania. Complicating things more, Dia's asylum application exclusively related to Mauritania, not Senegal. The IJ and Dia's counsel agreed that at different times Dia had represented that he was both Senegalese and Mauritanian. So, at some point, he'd made misrepresentations in his effort to come to and remain in the United States. *See* 8 U.S.C. § 1182(a)(6)(C)(i). He'd need a waiver to become eligible for adjustment of status. *Id.* § 1182(i)(1).

All told, three barriers stood between Dia and lawful status. First, he needed USCIS to grant his wife's I-130. Second, he needed to get a waiver for his misrepresentations. And third, the IJ would need to exercise his discretion to adjust Dia's status.

What would become of Dia in the meantime? The Government detained Dia in June 2019. He had withdrawn his only pending application for relief with prejudice. And the IJ did not have to let the I-130 adjudication resolve before entering a removal order. So the parties and the court agreed to give Dia a chance to post bond. If Dia could cobble together $7,500, he could leave federal custody and remain in the United States, at least until the resolution of his I-130 petition.

But Dia and his family didn't have, and couldn't come up with, the money. The IJ continued proceedings twice so Dia could call more acquaintances. But these efforts were fruitless. At the last hearing, Dia's counsel conceded that "because [Dia] has withdrawn his asylum application and the I-130 remains pending, we see no options." He did not request a continuance.

And so, with no application for relief pending before the court and Dia unable to pay his bond, the IJ ordered him removed.

Dia appealed. The BIA affirmed, noting that Dia failed to request a continuance at the last hearing. Even construing his appeal as a claim for "remand . . . to request a further continuance to await adjudication of the pending I-130 petition," the Board denied relief. Dia hadn't shown the "good cause" required for a continuance.

So Dia appealed again, this time to us. Before we could decide his case, DHS removed him to Senegal. His I-130 is still pending.

## II.

Dia's only argument on appeal is that the BIA erred in its conclusion that he had not shown good cause for a continuance. Although Dia failed to ask the IJ for a continuance at his final removal hearing, we have jurisdiction over unexhausted claims the BIA addresses on the merits. *See Khalili v. Holder*, 557 F.3d 429, 434–35 (6th Cir. 2009).

The Government argues that Dia's sole claim is moot because "removal has already been completed." They characterize Dia's request for a continuance as solely seeking to delay his removal proceedings. The Government's argument is cursory at best, and Dia didn't file a reply brief to respond. But the argument goes to our jurisdiction, so we address it.

We disagree with the Government. "It has long been settled that a federal court has no authority 'to give opinions upon moot questions . . . which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). But "[t]he crux of [Dia's] appeal is that the immigration judge was wrong to order him removed instead of granting a continuance." *Meza Morales v. Barr*, 973 F.3d 656, 660 (7th Cir. 2020) (Barrett, J.). Granting him a continuance necessarily vacates

the IJ's removal order. *Id.* So his claim is not moot. *See Harmon v. Holder*, 758 F.3d 728, 733 (6th Cir. 2014).

Consider first the general framework governing mootness after an alien has been removed. Normally, removal does not moot an alien's petition for review of the removal order itself. *See, e.g.*, *Garcia-Flores v. Gonzales*, 477 F.3d 439, 441 n.1 (6th Cir. 2007); *accord Nken v. Holder*, 556 U.S. 418, 435 (2009) ("Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal."). Furthermore, the removal order bars Dia from gaining admission to the United States for five years from the date of his removal. 8 U.S.C. § 1182(a)(9)(A)(i). This ongoing injury would prevent removal from mooting Dia's appeal of the order on its merits.

But this case doesn't fit squarely in that settled framework. Dia is not challenging the IJ's determination that he is removable; his challenge goes not to his removability, but to the timing of the IJ's entry of his removal order. In other words, he's asking us to undo removal for reasons unrelated to his *current* removability. Rather, because his pending I-130 might lead to his becoming a lawful permanent resident *in the future*, he's saying that his removal was premature. So the operative question is whether we can still "grant" him "effectual relief" from removal based on an unresolved collateral proceeding that could help Dia avoid removability altogether. *See Church of Scientology*, 506 U.S. at 12. And the answer is yes because we can vacate the removal order if we find that the IJ should have granted the continuance.[1] *Meza Morales*, 973 F.3d at 660–61.

---

[1] Consider, by analogy, a civil or criminal proceeding. Imagine a litigant is denied a continuance to adequately prepare a response to the other party's new evidence revealed on the eve of trial. Regardless of the argument's merits, the requested remedy on appeal is vacatur of the

The Government relies on our recent decision in *Garcia v. Barr*, 960 F.3d 893 (6th Cir. 2020). Although that decision dealt with a similar continuance issue, it does not control Dia's case. There, the petitioner requested a continuance to seek adjustment of status. *Id.* at 897. But by the time we considered his appeal, the IJ in that case had already denied the petitioner's requested adjustment. Administrative Record at 437, *Garcia v. Barr*, 960 F.3d 893 (6th Cir. 2020) (No. 19-3489); *id.* at 3–4 (BIA affirming the same). And so the dispute in *Garcia* was "no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). There is no "legally cognizable interest in the outcome" of a continuance sought to allow the alien to request already-denied relief. *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)); *see, e.g.*, *Qureshi v. Gonzalez*, 442 F.3d 985, 988 (7th Cir. 2006) (claim for continuance mooted by denial of I-130); *Ani v. Holder*, 548 F. App'x 83, 83–84 (4th Cir. 2013) (per curiam) (same); *Ezeokoli v. Holder*, 482 F. App'x 968, 969 (5th Cir. 2012) (per curiam) (same); *Ismail v. Barr*, 799 F. App'x 20, 23 (2d Cir. 2020) (claim for continuance mooted by denial of adjustment of status).

But that isn't what's happening here. Dia seeks a continuance until USCIS, which has not indicated how it will resolve that petition, decides his I-130. This ongoing third-party proceeding distinguishes *Garcia*. In other words, the denial of Dia's continuance may have prematurely ended the IJ's adjudication of Dia's removal proceedings. As explained above, a grant of his I-130 coupled with a waiver for his past misrepresentations and an adjustment of status would make him

---

ultimate judgment and a new trial. *See, e.g.*, *United States v. Garner*, 507 F.3d 399, 408–09 (6th Cir. 2007) (reversing the district court's denial of a continuance, vacating district court's judgment after criminal jury trial, and remanding for new trial); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969) (per curiam) (reversing the district court's denial of a continuance, vacating civil judgment, and remanding for a new trial). The claim for a continuance is not moot simply because the trial below had concluded; it is a challenge to when the judge held the trial in relation to other events.

a lawful permanent resident. Thus, Dia could still obtain relief if we vacate and remand his proceedings. *See Gjeluci v. Mukasey*, 303 F. App'x 274, 277 (6th Cir. 2008) (petition for review challenging only the denial of continuance not moot where petitioner could reinstate application for asylum and other forms of relief if petition were granted).

All of that said, Dia's claim fails on the merits. We review the BIA's affirmance of an IJ's denial of petitioner's motion for continuance under an abuse-of-discretion standard. *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007). An abuse of discretion occurs if "the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Id.* (quoting *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006) (alteration in *Abu-Khaliel*)).

An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. "[T]he focus of the inquiry is the apparent ultimate likelihood of success on the adjustment application." *Matter of Hashmi*, 24 I. & N. Dec. 786, 790–91 (BIA 2009). The Board has handed down five illustrative factors for IJs to consider: DHS's position on the motion, whether the underlying visa petition is prima facie approvable, respondent's eligibility for adjustment of status, whether respondent would merit the favorable exercise of discretion necessary for adjustment of status, and the reason for the requested continuance. *Id.* at 790. But IJs should consider everything relevant to a given case, including the alien's diligence in seeking relief and any past continuances. *See id.*; *Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 415 (AG 2018). "[C]ontinuances should not be granted when a respondent's collateral pursuits are merely speculative." *Matter of L-A-B-R-*, 27 I. & N. Dec. at 414 (citing *In re Matter of M-*, 5 I. & N. Dec. 622, 624 (BIA 1954)).

And speculative is the only way to describe Dia's collateral pursuits. If his I-130 is granted (and it may or may not be), Dia will need to obtain a waiver of his earlier misrepresentations

(which he may or may not get), and then the IJ will have to exercise its discretion to adjust Dia's status (which he may or may not do). This number of nested contingencies renders relief speculative.

Other considerations reinforce the BIA's denial of Dia's motion. Dia has not diligently pursued lawful status. *Id.* at 415 ("it is reasonable to require the respondent to have exercised due diligence in pursuing collateral relief in advance of the noticed hearing date") (cleaned up). He failed to timely file his original I-589, which cost him his claim for asylum. On top of that, after Dia married his wife in 2015, the couple waited more than four years to file an I-130.

And the IJ already granted two continuances, neither of which helped Dia post bond. *See Matter of Hashmi*, 24 I. & N. Dec. at 787 ("a further continuance" may be "unwarranted in light of the numerous continuances already granted"). The parties openly discussed a third continuance with the IJ at the last removal hearing. Ultimately, Dia's own lawyer did not move for a continuance, instead conceding that he and Dia "see no options." (*See* AR3 ("[A] review of the record indicates that at the last hearing before the Immigration Judge, [Dia] did not request a continuance."))

"It cannot be the case that anytime an alien . . . has an I-130 petition filed on his behalf, the IJ is required to grant a continuance." *Ilic-Lee*, 507 F.3d at 1047 (citation omitted and emphasis removed). There is no end in sight for Dia's I-130 adjudication. Nor is there any definitive indication that the IJ would grant Dia adjustment of status. *Cf. Matter of L-A-B-R-*, 27 I. & N. Dec. at 418 (indication that the IJ would deny adjustment of status justifies denial of continuance). Rather, the IJ openly told Dia's counsel he was "worr[ied] about what . . . [Dia's] other lawyers ha[d] been doing in this case," observed that Dia would require a waiver along with a granted

8

I-130, and set bond in part to delay resolving issues around the waiver and adjustment of status. On this record, the Board did not abuse its discretion.

**III.**

Dia's petition is **DENIED**.