RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JOGELLY PAOLA TURCIOS-FLORES; TOMAS DASAET ARGUETA-TURCIOS; ANGEL ANDRES ARGUETA-TURCIOS,

          *Petitioners*,

     *v.*

MERRICK B. GARLAND, Attorney General,

          *Respondent*.

> No. 22-3325

On Petition for Review from the Board of Immigration Appeals;
Nos. A 209 223 502; A 209 223 503; A 209 223 504.

Decided and Filed:  May 5, 2023

Before:  COLE, GIBBONS, and READLER, Circuit Judges.

─────────────────

### COUNSEL

**ON BRIEF:**  Justin S. Fowles, Samuel W. Wardle, FROST BROWN TODD, Louisville, Kentucky, for Petitioners.  Allison Frayer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

     COLE, J., delivered the opinion of the court in which GIBBONS, J., joined.  READLER, J., (pp. 14–17), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

COLE, Circuit Judge.  Jogelly Paola Turcios-Flores[1] petitions for review of the Board of Immigration Appeals' order affirming the Immigration Judge's denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture.  The Board correctly denied Turcios-Flores's application for protection under the Convention Against Torture and her asylum application insofar as it relates to her membership in her husband's family.  But because the Board's decision with respect to two of Turcios-Flores's additional proposed social groups was not supported by substantial evidence, and because the withholding-of-removal analysis was flawed, we grant the petition in part, deny the petition in part, and remand for further proceedings.

## I.  BACKGROUND

Turcios-Flores and her husband operated two merchant stands at the Colon Market in Tegucigalpa, Honduras.  Like the market's other merchants, Turcios-Flores and her husband were subject to a "war tax" imposed by MS-13—a gang well-known for its harassment, extortion, violence, and intimidation tactics.  Under MS-13's influence, the family paid 200 lempiras each week to operate their stands at the market.

In 2012, Turcios-Flores's husband inherited a farm in Teupasenti, a rural part of Honduras, from his father.  The family began growing coffee and plantains at the farm using skills learned from Turcios-Flores's father-in-law.  The family was careful, however, not to reveal their ownership of the land as they feared there would be trouble if others knew of it.  The only person outside of their nuclear family to learn of their farm was one of their cousins, whom they would occasionally take to the farm for work.

That same cousin later joined MS-13, serving as the gang's neighborhood head.  In that role, he shared Turcios-Flores's secret landownership with MS-13.  Almost immediately, MS-13

---

[1]In the Administrative Record, Turcios-Flores's name appears both with and without hyphenation.  To match the case name, the hyphenated version is used throughout the opinion.

began calling Turcios-Flores's husband and demanding an additional payment of 20,000 lempiras, an amount 100 times greater than any sum the family had previously paid. The gang threatened to kill her husband if he refused to pay. Turcios-Flores's husband decided to flee to the United States alone, hoping that MS-13 would stop extorting and threatening his family once he was gone.

He was wrong. Within a couple of months, the gang began to threaten Turcios-Flores herself, again demanding 20,000 lempiras and seeking the sum her husband never paid. After Turcios-Flores complied with their demand, MS-13 did not leave her alone, but instead returned, increasing their demanded payment to 100,000 lempiras. This time, MS-13 warned Turcios-Flores that her children would be killed if she did not pay, explaining that "[t]hey knew where [her] children went to school, when they left and when they came back." (A.R. 133.) Turcios-Flores turned to the police, but they offered her only a phone number to call if gang members returned to her home. With few other options available to her, Turcios-Flores and her two children fled to the United States.

Turcios-Flores and her children entered the United States near Hidalgo, Texas without the required entry documents. Turcios-Flores and her sons were later issued notices to appear "charging them with removability pursuant to the INA § 212(a)(7)(A)(i)(I) [8 U.S.C. § 1182(a)(7)(A)(i)(I)], as immigrants who, at the time of application for admission, were not in possession of valid entry documents." (A.R. 66.) She filed an application for asylum, withholding of removal, and protection under the Convention Against Torture on behalf of her and her two sons. An immigration judge ("IJ") denied her application. On appeal, the Board of Immigration Appeals ("the Board") affirmed the IJ's denial. Turcios-Flores now petitions this court for review of the Board's decision.

## II. ANALYSIS

### A. Standard of Review

"Where the [Board] reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the [Board's] decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th

Cir. 2009) (citation omitted). We review the IJ's reasoning only to the extent the Board adopted it. *Id.* It follows that any issues the Board did not address are not before the court. *See Slyusar v. Holder*, 740 F.3d 1068, 1073 (6th Cir. 2014) (citing *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002)); *see also Bi Xia Qu v. Holder*, 618 F.3d 602, 609 (6th Cir. 2010) ("When the [Board] does not fully consider an issue, . . . 'the proper course, except in rare circumstances, is to remand to the [Board] for additional investigation or explanation.'" (quoting *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006))). We review factual findings under the substantial evidence standard, meaning we reverse only when the evidence compels a different conclusion. *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020). We review legal conclusions de novo. *Id.*

## B. Asylum

### 1. Particular Social Group

An individual must meet the definition of a "refugee" to be eligible for asylum. 8 U.S.C. § 1158(b)(1)(A). A refugee is an individual "who is unable or unwilling to return to" their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" *Id.* § 1101(a)(42)(A). To establish membership in a cognizable particular social group, an asylum applicant must show "that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014); *Umaña-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013).

"Courts of Appeals have deferred to *Matter of Acosta*'s broad interpretation of 'particular social group' as encompassing any group, however populous, persecuted because of shared characteristics that are either immutable or fundamental." *Bi Xia Qu*, 618 F.3d at 607 (quoting *Hong Ying Gao v. Gonzales*, 440 F.3d 62, 67 (2d Cir. 2006), *vacated and remanded on other grounds by Keisler v. Hong Yin Gao*, 552 U.S. 801 (2007)). A common immutable or fundamental characteristic "must be one that the members of the group either cannot change, or should not be required to change [to avoid persecution] because it is fundamental to their individual identities or consciences." *Id.* at 606 (quoting *Matter of Acosta*, 19 I. & N. Dec. 211,

233 (BIA 1985)). Next, "[t]he essence of the particularity requirement . . . is whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir. 2010) (alteration in original) (quoting *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009)). Finally, social distinction requires that the shared characteristic "generally be recognizable by others in the community." *Id*. (quoting *Al-Ghorbani*, 585 F.3d at 994).

Though the determination of whether a proposed particular social group is cognizable is a legal determination, *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691 (6th Cir. 2015), decisions as to the underlying elements are factual determinations subject to the substantial evidence standard, *Zaldana Menijar v. Lynch*, 812 F.3d 491, 497, 498–500 (6th Cir. 2015) (applying the substantial evidence standard to determine whether a proposed social group is socially distinct). Turcios-Flores appeals the Board's decision with respect to three proposed social groups: (1) rural landowners or farmers, (2) single mothers living without male protection, and (3) members of her husband's family. We evaluate each proposed group in turn.

### a. Rural Landowners or Farmers

Here, the Board agreed with the IJ's determination that Turcios-Flores's proposed social group of "rural landowners or farmers" was not cognizable because "it is unclear from the record that Honduran landowners or farmers share an immutable characteristic that is identifiable to would-be persecutors." (A.R. 4.) But in *Bi Xia Qu*, we explained that the shared characteristic may be immutable *or fundamental*, meaning that it "must be one that the members of the group either cannot change, or *should not be required to change* because it is fundamental to their individual identities or consciences." 618 F.3d at 606 (emphasis added) (quoting *Acosta*, 19 I. & N. Dec. at 233). Further, we have recognized that a common immutable or fundamental characteristic shared by a particular social group "might be a shared past experience such as . . . land ownership." *Id.* (quoting *Acosta*, 19 I. & N. Dec. at 233). While landownership does not automatically confer membership in a particular social group in all instances, the record here indicates that Honduran landownership is a fundamental characteristic. *Cf. Matter of E-R-A-L-*,

27 I. & N. Dec. 767, 769–71 (BIA 2020) (finding landownership was not a cognizable social group in part because the landowning group was "amorphous and lack[ed] particularity").

Turcios-Flores testified that she and her husband inherited the rural farm from his father in 2012. Turcios-Flores explained that her husband taught her how to grow coffee and plantains, knowledge which her husband said he learned from his father as a child. Turcios-Flores and her husband both testified that they kept their ownership a secret precisely because they were concerned about the dangerous consequences if their ownership was discovered. The record contains evidence of the importance of the farm and landownership to Turcios-Flores and her family and compels the conclusion that Honduran landownership is a common characteristic that members of the social group, including Turcios-Flores, "should not be required to change because it is fundamental to their individual identities or consciences." *Bi Xia Qu*, 618 F.3d at 606 (quoting *Acosta*, 19 I. & N. Dec. at 233). Thus, the Board's conclusion that it is unclear from the record whether landowners share an immutable or fundamental characteristic is not supported by substantial evidence

Moreover, the determination that Turcios-Flores failed to identify a *further* characteristic, one beyond landownership itself, to satisfy the immutability requirement imposed a higher burden than that indicated by relevant case law. The IJ explained that "[w]hile the [Board] has recognized 'landowners' in some cases as a cognizable particular social group, it is unclear from this record that Honduran landowners or farmers share a *further* characteristic that is identifiable to would-be persecutors, thus making this group immutable or fundamental." (A.R. 75 (emphasis added) (first citing *M-E-V-G-*, 26 I. & N. Dec. at 241; and then citing *Bi Xia Qu*, 618 F.3d at 607).) First, much of the discussion in *M-E-V-G-* focused on whether landownership could satisfy the particularity and social distinction requirements. 26 I. & N. Dec. at 241. Ultimately, the Board in *M-E-V-G-* instructed IJs to "make findings whether 'landowners' share a common immutable characteristic," not that the common immutable characteristic must go beyond the attribute of landownership itself. *Id.*

The Board, in adopting the IJ's decision on this point, cited *Matter of E-R-A-L-*, 27 I. & N. Dec. at 770–72. In *E-R-A-L-*, the Board agreed with the IJ's determination that, on that record, landownership was not immutable because "ownership of [the applicant's] family's

land could cease through 'giving up' or selling that property." *Id.* at 771. But this interpretation is incomplete—it addresses immutability without considering whether the shared characteristic may be "*fundamental* to [group members'] individual identities or consciences." *Bi Xia Qu*, 618 F.3d at 606 (quoting *Acosta*, 19 I. & N. Dec. at 233) (emphasis added). Under the correct analysis, the record here compels a conclusion that Honduran rural landownership in this case is a common fundamental characteristic because Turcios-Flores should not be required to change this aspect of her identity to avoid persecution given the demonstrated importance of landownership to her. Therefore, we remand to the Board for further explanation of whether this group meets the social distinction and particularity requirements as well as the remaining asylum considerations.

### b. *Single Mothers Living Without Male Protection*

Turcios-Flores also seeks asylum based on her status as a "single mother living without male protection." To begin, the government asserts that Turcios-Flores "does not squarely challenge the agency's ruling that the proposed group 'single mothers without protection' lacks the requisite social distinction" and so "[s]he has therefore waived any such challenge." But Turcios-Flores did not waive review of the Board's decision on this issue. In her initial brief, she argues that the Board wrongly concluded that single mothers living without male protection was not a cognizable social group—a determination that necessarily encompasses the element of social distinction. *See M-E-V-G-*, 26 I. & N. Dec. at 237–38. She then further expands on this previously raised argument in her reply brief, so the issue was not waived. *Cf. Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) ("An argument raised for the first time in a reply brief will not be considered by this Court.").

As to the merits, the Board agreed with the IJ that "even assuming that this proposed group[, single mothers living without male protection,] is immutable, the respondent has not established that her proposed social group is *socially distinct* within Honduras[.]" (A.R. 4 (emphasis added).) The IJ offered one sentence on this issue: "[T]here is no evidence in the record that Honduran society considers this proffered group socially distinct or that this group of people recognize themselves as being socially distinct in Honduran society." (A.R. 74.) But the record compels a different conclusion. First, the police in Honduras distinguish single mothers

like Turcios-Flores from a broader category of people vulnerable to persecution. The Deputy Commander of the Honduran National Police explains that "gangs are identifying vulnerable people, for example, women who have children with their husbands in the U.S." (A.R. 385.)

Moreover, this group is not "circularly defined by the fact that it suffers persecution." *Umaña-Ramos*, 724 F.3d at 671 (quoting *Rreshpja v. Gonzalez*, 420 F.3d 551, 556 (6th Cir. 2005)). Rather, this group is vulnerable to persecution in part due to its social distinction. Mothers without male partners in their households are recognized "as a discrete class of persons" within Honduran society, *see Bonilla-Morales*, 607 F.3d at 1137, and by Turcios-Flores herself.

*Umaña-Ramos* captures the difference between a group defined because it suffers persecution and a group that suffers persecution because it is socially defined. The *Umaña-Ramos* court confirmed that "young Salvadorans who have been threatened because they refused to join the MS gang is not cognizable under the INA." 724 F.3d at 673 (internal quotation marks, brackets, and citation omitted). That group's only shared narrowing characteristic was previous interaction with gang members. Here, "single mothers living without male protection" share narrowing characteristics—their marital and maternal status, for instance—separate and apart from any extortion by gang members. It just so happens that these characteristics *also* make them more vulnerable to extortion. Turcios-Flores's own situation exemplifies this. While Turcios-Flores previously interacted with MS-13 through the war tax at the market, the gang began targeting Turcios-Flores with extreme threats, including threats against her children's lives, only *after* her husband left the country and left Turcios-Flores alone to raise her children. The record shows that Turcios-Flores was vulnerable to persecution because she is part of a socially defined group.

Thus, the record compels a different conclusion than that reached by the Board as to whether the proposed social group "single mothers living without male protection" is socially distinct. We grant the petition on this issue and remand for additional proceedings as to the remaining asylum eligibility determinations.

*2. Nexus*

The analysis as to the remaining proposed social group—the nuclear family of Turcios-Flores's husband—is slightly different. While the Board's analysis of the other two social groups focused on whether they were cognizable, the Board's analysis here focused on the connection between Turcios-Flores's persecution and her membership in her husband's family.

If a particular social group is cognizable, a petitioner also must show that they were persecuted "on account of" their membership in this group. 8 U.S.C. § 1101(a)(42)(A). Referred to as the "nexus" determination, a petitioner must demonstrate that their membership in the particular social group served as "one central reason" for the petitioner's persecution. *See id.* § 1158(b)(1)(B)(i); *Guzman-Vazquez v. Barr*, 959 F.3d 253, 270–72 (6th Cir. 2020). We review a nexus determination—a finding of fact—under the substantial evidence standard. *Zaldana Menijar*, 812 F.3d at 497, 500 n.4.

The Board recognized that Turcios-Flores's "proposed social group, defined as 'the nuclear family of her husband,' may be cognizable," but determined that the IJ's conclusion that MS-13 targeted her primarily for pecuniary gain was not clearly erroneous. (A.R. 4–5.) The Board reasoned that the family dealt with MS-13 for years and the increased threats and extortion "did not begin until later with the farm income[.]" (A.R. 5.) Moreover, the Board agreed with the IJ's conclusion that the record contained "insufficient evidence that any gang member held any particular animus against the respondent's family based on some unique family characteristic." (A.R. 5.) *See also Matter of L-E-A-*, 27 I. & N. Dec. 40, 43–44 (BIA 2017). The Board's decision here was supported by substantial evidence as the record included no indication that Turcios-Flores's connection to her husband's family singled her out for gang-driven persecution. Thus, we deny the petition as it pertains to the nexus between Turcios-Flores's persecution and her membership in her husband's nuclear family.

As a final note, the Board only adopted the IJ's reasoning with respect to whether "single mothers living without male protection" or "rural landowners or farmers" were cognizable social groups. The Board did not address the IJ's reasoning as to whether Turcios-Flores also failed to

establish that her membership in these groups was "one central reason" for her persecution.  8 U.S.C. § 1158(b)(1)(b)(i); *see also Guzman-Vazquez*, 959 F.3d at 270–72.

We are only permitted to review the IJ's decision to the extent that the Board adopted it. *Khalili*, 557 F.3d at 435.  The only indication that the Board adopted the IJ's reasoning as to nexus determinations beyond that relating to Turcios-Flores's membership in her husband's family is the following sentence:  "Considering the record in its entirety, we affirm the Immigration Judge's determination that the respondent has not established that she is statutorily eligible for asylum under the Act[.]"  (A.R. 5 (citing A.R. 71, 76).)

The citations lead us back to the following determinations in the IJ's opinion.  First, "[f]or the reasons that follow, the Court finds that the Respondent has not established that she is statutorily eligible for asylum[,]"  (A.R. 71), and second,  "the Court still finds insufficient evidence in the record to prove a nexus to a protected ground[,]"  (A.R. 76).  But the Board's citation to these general conclusions alone is not enough to indicate that the Board adopted the IJ's reasoning regarding the nexus between Turcios-Flores's persecution and her membership in the proposed social groups defined as "single mothers living without male protection" and "rural landowners or farmers."  *See Zometa-Orellana v. Garland*, 19 F. 4th 970, 977 (6th Cir. 2021) (noting that the Board should, at minimum, "consider[] each of the [petitioner's] arguments and explain why it agreed with it.").  This is especially true given that the Board's decision reasoned through the determination that neither group was cognizable while making no mention of nexus until its discussion of Turcios-Flores's membership in her husband's family.

Thus, we conclude that the Board's decision did not adopt the IJ's reasoning as to the nexus between Turcios-Flores's persecution and her membership in either group defined as "single women living without male protection" or "rural farmers or landowners."  So, we do not review the IJ's determinations on those issues.  *Khalili*, 557 F.3d at 435.  We therefore deny the petition to review the asylum request as it pertains to Turcios-Flores's membership in her husband's family but grant the petition to review the asylum request as it relates to Turcios-Flores's membership in the remaining two proposed social groups.  Because the Board's conclusions as to the remaining two proposed social groups were not supported by substantial evidence, we remand for further proceedings.

## C. Withholding of Removal

Turcios-Flores also applied for withholding of removal. The Board affirmed the IJ's denial of Turcios-Flores's application, explaining that Turcios-Flores did not show that "the criminal gang would be motivated by her membership in a cognizable particular social group," so she could not "establish that her membership in her articulated particular social group . . . was at least 'a reason' for the harm she experienced or fears in Honduras." (A.R. 5.)

The withholding-of-removal analysis also involves a nexus determination. *Guzman-Vazquez*, 959 F.3d at 270–72; 8 U.S.C. § 1231(b)(3)(c). But it is inappropriate to rely on the asylum application's nexus determination to make the withholding-of-removal application's nexus determination because the two analyses are distinct. *Guzman-Vazquez*, 959 F.3d at 270–74. A court "need look no further than the text of the withholding statute in comparison with the text of the asylum statute: 'a reason' [in the withholding statute] is different from—and weaker than—'a central reason [in the asylum statute].'" *Id.* at 272. Given the relationship between these two analyses, it cannot be assumed that if Turcios-Flores failed to establish that membership in a particular social group was "a central reason" for persecution in the asylum context, then she also failed to establish that it was "a reason" in the withholding-of-removal context.

Although the Board noted the difference between the two analyses, the determination as to whether membership in a particular social group was "at least a reason" for an individual's persecution is a factual one that the IJ should make in the first instance. *See* 8 C.F.R. § 1003.1(d)(3)(iv)(A) ("The Board will not engage in factfinding in the course of deciding cases[.]"); *Agustin-Tomas v. Sessions*, 728 F. App'x 590, 594 (6th Cir. 2018) (applying the substantial evidence standard—the standard used to review factual findings—to a withholding-of-removal nexus determination). Here, the IJ did not make a finding under the appropriate standard because the *Guzman-Vazquez* decision clarified the difference between the two determinations while Turcios-Flores's appeal was pending. As the *Guzman-Vazquez* court did, we remand to the Board so that the withholding-of-removal claim can be reconsidered under the correct analysis, including through any further proceedings necessary based on the conclusions above. *See Guzman-Vazquez*, 959 F.3d at 270–74; *cf. Mapouya v. Gonzales*, 487 F.3d 396, 416

(6th Cir. 2007) (remanding to the agency with directions to return the case to the IJ for any further proceedings necessary and consistent with the opinion).

**D.  Convention Against Torture**

That leaves Turcios-Flores's application for protection under the Convention Against Torture ("CAT"). The CAT protects those who would more likely than not be subject to torture "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *see also id*. § 1208.17(d)(3). Torture consists of acts "by which severe pain or suffering . . . is intentionally inflicted on a person . . . for any reason based on discrimination of any kind[.]" *Id.* § 1208.18(a)(1). But likelihood of torture alone is not enough; it must be done by or with the acquiescence of government officials. *See Garcia v. Barr*, 960 F.3d 893, 896 (6th Cir. 2020). This means that a petitioner may be without CAT protection even if it is more likely than not that they will be tortured by private parties, so long as the government has not consented to, acquiesced in, or engaged in willful blindness towards this torture. *See id.*

The Board adopted the IJ's finding that Turcios-Flores failed to "meet her burden of proof to establish that it is more likely than not that she will be tortured by, or 'at the instigation of or with the consent or acquiescence'" of the Honduran government. (A.R. 5.) This determination was not unreasonable because evidence in the record supports the conclusion that Honduras is trying to prevent gang violence and extortion—even if it failed in Turcios-Flores's case. Further, we have previously denied protection under the CAT where, as here, the record supported the conclusion that a country's government attempted to take action against pervasive gang violence and police corruption, even though its attempts were unsuccessful. *Zaldana Menijar*, 812 F.3d at 501–02.

Turcios-Flores responds that "nowhere in its order did the [Board] explain how [Honduras's] 'efforts' would have any impact on the specific persecution that [she] suffered." Pet'r Br. 29. But whether Turcios-Flores is "likely to face continued persecution in Honduras" upon return is not enough to support relief under the CAT absent a showing that the government

participated or acquiesced in the torture. *See* 8 C.F.R. §§ 1208.18(a)(1); *see also Garcia*, 960 F.3d at 896. We therefore deny Turcios-Flores's petition for review of her CAT claim.

## III. CONCLUSION

For the foregoing reasons, we grant the petition in part, deny the petition in part, and remand for further proceedings consistent with this opinion.

---

**CONCURRENCE AND DISSENT**

---

CHAD A. READLER, Circuit Judge, concurring in part and dissenting in part.  To be eligible for asylum or withholding of removal, Jogelly Turcios-Flores must show that she was or, if returned to Honduras, would be persecuted on account of her membership in a protected group.  8 U.S.C. § 1158(b)(1)(B)(i); *id.* § 1101(a)(42); *id.* § 1231(b)(3); 8 C.F.R. § 1208.13(a); *id.* § 1208.16(b).  The Immigration Judge and the Board of Immigration Appeals reasonably determined that she made no such showing.  The majority opinion now sends two questions back to the Board:  whether the group "rural landowners and farmers" in Honduras satisfies social distinction and particularity requirements for withholding of removal and asylum purposes; and whether Turcios-Flores has established a nexus between her persecution and her membership in that group or, alternatively, in the group "single mothers without male protection."  But the Board has already passed on both issues.

Start with Turcios-Flores's purported membership in a cognizable social group consisting of rural landowners and farmers.  To qualify for asylum or withholding on this ground, Turcios-Flores must show she was or will be persecuted due to her membership in the group.  She failed to do so.  In reviewing Turcios-Flores's case, the Board concluded that the lone basis upon which Turcios-Flores faced any persecution was her wealth.  B.I.A. Dec. at 3, A.R. 5 ("affirm[ing]" the Immigration Judge's determination that Turcios-Flores was not eligible for asylum as "the criminal gang targeted [Turcios-Flores] *simply because* it had a pecuniary interest and [she] had multiple sources of income" (emphasis added)); *see also Simply*, Collins Online Dictionary, https://www.collinsdictionary.com/us/dictionary/english/simply ("You use simply to emphasize that something . . . happens for only one reason . . . .") (last accessed Apr. 28, 2023); *Simply*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/simply ("Solely, Merely") (last accessed Apr. 28, 2023).  And because her wealth does not place Turcios-Flores in a protected group, the Board correctly denied Turcios-Flores both withholding and asylum.  *See Sanchez-Robles*, 808 F.3d at 692 ("[T]hose who are perceived as wealthy do not constitute a particular social group." (quoting *Diaz-Hernandez v. Holder*, 635 F. App'x 159,

161 (6th Cir. 2015))); *see also Lorenzana-Montepeque v. Barr*, 781 F. App'x 490, 494 (6th Cir. 2019) (declining to declare an applicant a refugee where "her family was targeted, and her oldest daughter was threatened, because the extortionists knew the family 'owned a taxi business and had items to liquidate to meet the monetary demands'"). Because Turcios-Flores's persecution was "simply" on account of her "multiple sources of income," her status as a landowner or farmer, by definition, was not "a reason" for her persecution.

Nor, in any event, could Turcios-Flores satisfy the threshold showing that landowners and farmers constitute an identifiable social group. To do so, Turcios-Flores "must demonstrate by evidence in the record that members of the proposed group share an immutable characteristic and that the group is defined with particularity and is perceived to be socially distinct in the society in question." *Matter of E-R-A-L-*, 27 I. & N. Dec. at 770–71 (holding that "landowners" are not a cognizable group in Guatemala because such a group lacks particularity, is not socially distinct, and does not share any immutable or fundamental characteristics); *see also Matter of M-E-V-G-*, 26 I. & N. Dec. at 237; *Umaña-Ramos*, 724 F.3d at 671. For a group to be socially distinct, it must share a characteristic that "other people in the particular society" are able to identify as meaningfully separating the group from broader society. *Matter of M-E-V-G-*, 26 I. & N. Dec. at 238.

The Board rightly concluded that Turcios-Flores did not show that "rural landowners or farmers" share any distinguishing traits identifiable to others in Honduras. I have no quibble with the majority opinion's assessment that landownership is not a trait we should force people to abandon. *But see Matter of E-R-A-L-*, 27 I. & N. Dec. at 771 (recognizing that it is sometimes acceptable to expect people to abandon their property). But that observation does not address the Board's central point: the record does not show that landownership is identifiable to would-be persecutors in Honduras. In other words, substantial evidence supports the Board's conclusion that Turcios-Flores did not show that her proposed group was socially distinct. Why remand to the Board to say the same thing once more?

Now to single mothers without male protection. Again, because Turcios-Flores's persecution was "simply" on account of her "multiple sources of income," her status as a single mother also was not "a reason" for her persecution. In suggesting otherwise, the majority

opinion claims that "the gang began targeting Turcios-Flores with extreme threats . . . only *after* her husband left the country." Maj. Op. at 8 (emphasis in original). But as the Board noted, Turcios-Flores's family was targeted and threatened in an identical manner before her husband's departure (over the exact same sum of money). And those threats, remember, began when the gang became aware of the Turcios-Flores family's increase in income.

Turcios-Flores's claim has even more problems. With respect to demonstrating that single mothers without male protection are socially distinct and thus cognizable, Turcios-Flores has both failed to exhaust her argument and, on top of that, forfeited it. Before the Board, she raised the issue obliquely, observing that "[m]ultiple circuits recognize single mothers living without male protection as a social group." But she cited no record evidence to support the point. Supplying case law and doing nothing else to make a record-based argument addressing social distinction is tantamount to raising the issue "in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (cleaned up). By doing so, Turcios-Flores failed to exhaust the issue before the Board, leaving us without jurisdiction to consider the matter. *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004).

Much the same was true with Turcios-Flores's petition for review in this Court. There, she merely reiterated her earlier argument, adding in two of our recent unpublished opinions. Other than citing a case or two, Turcios-Flores did not try to develop her argument. In its response brief, the government rightfully noted that Turcios-Flores had "never pointed to any evidence whatsoever that Honduran society views her proposed group as a distinct subset of society." Red Br. at 27. Only in Turcios-Flores's reply brief did she finally attempt to do so. And even then, the only relevant item she highlighted was a Honduran police officer's recognition that "women [in Honduras] who have children [while] their husbands [are living] in the U.S." are targeted because they are particularly vulnerable. Reply Br. at 6–7. Arguments raised for the first time in a reply brief, however, are forfeited. *Overstreet*, 305 F.3d at 578.

The majority opinion excuses these shortcomings. True, Turcios-Flores "argue[d] that the Board wrongly concluded that single mothers living without male protection was not a cognizable social group." Maj. Op. at 7. But other than that top-line statement, she made no

effort to demonstrate each of the corresponding elements.  These failures are significant, as "[i]t is insufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Buetenmiller*, 53 F.4th at 946.  And again, we typically do not allow parties to "expand" upon bare-bones arguments for the first time in their reply briefs.  So her argument was forfeited. *Id.* (cleaned up).

To sum up, the Board will have little work to do in once again denying Turcios-Flores's petition for withholding of removal and asylum.