NOT RECOMMENDED FOR PUBLICATION

File Name: 24a0466n.06

Case No. 24-3359

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JUAN ORDONEZ-CASTRO; L.C.P. (a minor child), | ) ) ) | **FILED**<br>Nov 25, 2024<br>KELLY L. STEPHENS, Clerk |
| Petitioners, | ) | ON PETITION FOR REVIEW |
| v. | ) ) ) | FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) | OPINION |
| Respondent. | ) ) | |

Before: KETHLEDGE, LARSEN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Juan Ordonez-Castro and his minor son, L.C.P.,[1] seek review

of a final order of the Board of Immigration Appeals ("BIA") dismissing their appeal from an

Immigration Judge's ("IJ") denial of their applications for asylum and withholding of removal

under the Immigration and Nationality Act ("INA"), and for relief under the Convention Against

Torture ("CAT"). For the reasons below, we deny the petition for review.

**I.**

Ordonez-Castro and L.C.P. are natives and citizens of Guatemala. Ordonez-Castro

unlawfully entered the United States in 2014. L.C.P. unlawfully entered the United States in 2017

with his mother, who later abandoned him. L.C.P.'s case was severed from his mother's and

consolidated with his father's. The Department of Homeland Security charged Ordonez-Castro

---

[1] In accordance with the Federal Rules of Appellate Procedure, we refer to the minor child by his initials. *See* Fed. R. App. P. 25(a)(5).

and L.C.P. as removable under the INA, 18 U.S.C. § 1182(a)(7)(A)(i)(I), and ordered them to appear before an IJ.

Ordonez-Castro then applied for asylum, withholding of removal, and CAT protection. Ordonez-Castro declared that his life would be at risk if he returned to Guatemala. His concerns began in September 2013 when Los Zetas, a vicious criminal organization, kidnapped him for an unknown reason. The gang held him hostage for three days and physically assaulted him during that time. Juan Mulul, who is related to Ordonez-Castro's in-laws, ultimately paid a ransom and the gang released Ordonez-Castro. Ordonez-Castro tried to file a police report, but did not do so because he was warned that it would put him in danger. Nevertheless, Los Zetas found out and threatened him. Los Zetas communicated the threat through Ordonez-Castro's cousin. The extent of the threat is unclear, as Ordonez-Castro testified that the gang threatened "to mess with" him, A.R. at 116, 120, but also to "kill" him, *id.* at 159. Around the same time, Mulul threatened Ordonez-Castro at gunpoint if Ordonez-Castro did not reimburse him for paying the ransom. Ordonez-Castro believes that Mulul has the connections and financial resources to pay organized criminals and the police to harm him. In January 2014, Ordonez-Castro fled to the United States.

Ordonez-Castro applied for asylum and withholding of removal based on his membership in a particular social group, and he applied for CAT protection. Ordonez-Castro identified his particular social group as "Guatemalan citizen[s] who tried to report criminal activity to the police." *Id.* at 133. The IJ denied Ordonez-Castro's application and ordered Ordonez-Castro and L.C.P. removed to Guatemala. On Ordonez-Castro's asylum and withholding-of-removal claims, the IJ found, among other things, that Ordonez-Castro's proposed social group was neither sufficiently particular nor socially distinct within Guatemalan society and thus not cognizable under the INA. As for his CAT claim, the IJ found that Ordonez-Castro did not establish that it

was "more likely than not that he would be tortured with government acquiescence in Guatemala" upon removal. *Id.* at 55.

Ordonez-Castro and L.C.P. appealed the denials to the BIA, which issued a separate opinion affirming the IJ's decision and dismissing the appeal.

**II.**

We have jurisdiction under 8 U.S.C. § 1252 to review final orders of the BIA. And "[w]here, as here, the [BIA] issues its own decision, we review the [BIA's] decision as the final agency determination but also review the [IJ's] decision to the extent that the [BIA] adopted it." *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020) (internal quotation marks omitted).

We review the BIA's legal determinations de novo and its factual findings under the substantial-evidence standard. *Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487, 495 (6th Cir. 2024) (citation omitted). Under the substantial-evidence standard, we will "uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) (quotation omitted). We will reverse the BIA's factual findings "only if the evidence not only supports a contrary conclusion, but indeed *compels* it." *Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014) (internal quotation marks omitted).

**III.**

Petitioners advance two primary arguments on appeal. First, they argue that the IJ and BIA erred by denying their applications for asylum and withholding of removal under the INA. Second, they challenge the denial of their request for CAT relief. We consider these arguments in turn.

## A. Denial of Asylum and Withholding of Removal

DHS or the Attorney General may grant asylum to an applicant who proves he is a "refugee." 8 U.S.C. § 1158(b)(1)(A)–(B). "A refugee is defined as a person who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, *membership in a particular social group*, or political opinion.'" *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (emphasis added) (quoting 8 U.S.C. § 1101(a)(42)(A)). To be cognizable, a particular social group must satisfy three requirements: "(1) immutability (members must share an immutable characteristic), (2) particularity (the group has discrete and definable boundaries), and (3) social distinction (society actually perceives the purported group as a distinct class of persons)." *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1036 (6th Cir. 2019) (citations omitted). Whether an applicant's proposed social group is cognizable under the INA is a legal question, but "decisions as to the underlying elements are factual determinations." *Turcios-Flores v. Garland*, 67 F.4th 347, 354 (6th Cir. 2023) (citations omitted). We need look no further than the particularity element.

The BIA concluded that Ordonez-Castro's proposed social group failed to satisfy the particularity element because the "concept of 'try[ing] to report criminal activity' is neither discrete nor definable; it is amorphous, subjective, and does not clearly outline the boundaries of the proposed group." A.R. at 4. The BIA added that the group, as defined, "would include anyone who attempts by any means to report any sort of criminal activity; it draws no distinctions with respect to the seriousness of the criminal activity reported, the manner of its reportage (officially versus informally, in-person versus anonymously), or the success or failure of the 'try.'" *Id.* Ordonez-Castro has not shown that the BIA erred.

We have "consistently rejected generalized, sweeping social group classifications for purposes of asylum." *Fernandez-Galvan v. Garland*, 851 F. App'x 537, 539 (6th Cir. 2021) (internal quotation marks and brackets omitted). And this case is no exception. Ordonez-Castro placed no practical limitations on his proposed social group and, "[a]s a result, there is virtually no unifying relationship or characteristic narrowing this group of individuals." *Reyes Galeana v. Garland*, 94 F.4th 555, 559 (6th Cir. 2024) (citation omitted). Indeed, the proposed social group contains terms such as "criminal activity," "try," and "report" that "do not have clear meanings such that it is evident who is included in the group and who is not." *See Sierra-Rivera v. Garland*, No. 21-2013, 2023 WL 3813242, at *3 (4th Cir. June 5, 2023); *Castro-Castaneda v. Barr*, 778 F. App'x 376, 378–79 (6th Cir. 2019).

Because Ordonez-Castro failed to meet his burden to demonstrate that his particular social group is cognizable under the INA, we deny Ordonez-Castro and L.C.P.'s petition on their asylum and withholding-of-removal claims. *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013).[2]

## B. Denial of CAT Relief

Under the CAT, immigration courts must grant deferral of removal to a noncitizen if he proves that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." *Id.* "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Zaldana Menijar v. Lynch*, 812

---

[2] Petitioners also raise other asylum-related issues, such as whether Ordonez-Castro established past persecution. But because Ordonez-Castro's failure to establish a cognizable social group is dispositive, we need not address those other arguments.

F.3d 491, 501 (6th Cir. 2015) (internal quotation marks and ellipses omitted). When evaluating the risk of torture, we consider: "(i) evidence of past torture inflicted on the applicant; (ii) evidence that the applicant could relocate to a part of the country where he is likely not to be tortured; (iii) evidence of gross, flagrant or mass violations of human rights within the country to which the applicant will be removed; and, (iv) other relevant information about the country to which the applicant will be removed." *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 852 (6th Cir. 2023) (quotation omitted). But "[e]vidence that is too generalized and too speculative cannot form the basis of relief." *Abdulahad v. Garland*, 99 F.4th 275, 293–94 (6th Cir. 2024) (internal quotation marks omitted). And when an applicant alleges probable torture from multiple sources or for independent reasons, we ask "whether the cumulative probability of torture by all of the entities, or for all reasons, exceeds 50%." *Marqus v. Barr*, 968 F.3d 583, 589 (6th Cir. 2020) (internal quotation marks and brackets omitted).

For several reasons, substantial evidence supports the BIA's conclusion that Ordonez-Castro failed to establish that he will more likely than not be tortured upon return to Guatemala.

First, Ordonez-Castro provided no evidence that he has received threats from Los Zetas since 2013. At most, he suggests that he is still afraid of Los Zetas because "[t]hey kill lots of people." A.R. at 120. Without any intervening evidence in the six years between Los Zetas's initial threats and Ordonez-Castro's testimony at his immigration hearing in 2019, however, the likelihood that the gang still wishes to harm him is too speculative to satisfy his evidentiary burden. *See Roache v. Garland*, No. 23-3628, 2024 WL 1804636, at *3 (6th Cir. Apr. 25, 2024); *Mateo-Vasquez v. Barr*, 822 F. App'x 317, 323 (6th Cir. 2020).

Second, Ordonez-Castro's fear of Mulul, is unfounded as he has not pointed to any evidence that Mulul still seeks to harm him. To the contrary, he testified to making periodic debt

payments to Mulul, which cuts against the basis for Mulul's threats—wanting to be paid back for the ransom cost.

Finally, we acknowledge Ordonez-Castro's testimony that in 2017 someone called him from a private number and threatened to kill one of his family members if he did not pay $100,000. But Ordonez-Castro stated that he does not know who made this call, so his counsel's unsupported argument that this call came from Los Zetas falls flat. *See Zein v. Holder*, 509 F. App'x 505, 509 n.2 (6th Cir. 2012). Moreover, Ordonez-Castro does not aver that this threat was ever executed, or that his family has otherwise been harmed in his absence. *Cf. Villalta v. Ashcroft*, 121 F. App'x 725, 727 (9th Cir. 2005) ("[T]here is no evidence that [petitioner] . . . will be tortured in the future given that no one in his family has been threatened or harmed since the telephone call in 1998."). As such, the possibility that this phone call signals that Ordonez-Castro will be tortured on return to Guatemala is too speculative to support CAT relief. *See Reyes-Maldonado v. Holder*, 485 F. App'x 131, 134 (6th Cir. 2012) (per curiam) ("The long uncarried-out extortion-related death and kidnapping threats against the [petitioners] do not compel the conclusion that it is more likely than not that they would be tortured upon return to Guatemala.").

In sum, Ordonez-Castro and L.C.P. have failed to show that the BIA erred in denying them CAT relief.

## IV.

For these reasons, we **DENY** Ordonez-Castro and L.C.P.'s petition for review.